**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Jean N.,[1] | Case No. 25-cv-2614 (JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Frank Bisignano, Commissioner of Social Security, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jean N. seeks judicial review of a final decision by the Defendant Commissioner of the Social Security Administration, denying Plaintiff's application for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Memorandum/Brief (Dkt. No. 11) and Defendant's Brief (Dkt. No. 25). Plaintiff argues that the final decision should be reversed for two reasons: (1) the evaluation of the persuasiveness of a medical opinion by the administrative law judge ("ALJ") who issued the decision did not comply with Social Security Administration ("SSA") regulations; and (2) the ALJ made inconsistent findings about Plaintiff's ability to understand, carry out, and remember *simple* instructions and her ability to understand, remember, and apply information to perform *detailed* tasks. The Commissioner asks the Court to affirm the decision. As set forth below, the Court concludes that the ALJ erred in

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

the first respect. In addition, the Commissioner did not respond to the second argument, thereby waiving any opposition to it. The Court reverses the final decision and remands the matter to the SSA for further proceedings.

## I. Background

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the DIB Program under Title II of the Social Security Act and the SSI Program under Title XVI of the Act. *See Smith v. Berryhill*, 587 U.S. 471, 475 (2019). The DIB Program provides support to those who worked and had sufficient Social Security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *See id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people). The SSI Program is a public assistance program that provides support to people with disabilities, whether or not they have paid Social Security taxes, and who demonstrate financial need. *See Smith*, 587 U.S. at 475; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

Plaintiff filed a DIB application on June 27, 2022, alleging disability beginning on December 8, 2021. (*See* Soc. Sec. Admin. R. (hereinafter "R.") at 11, 34, 53.)[2] Plaintiff's alleged impairments were "COVID pneumonia, right frozen shoulder, left upper thigh

[2] The Social Security administrative record is filed at Dkt. No. 5. The record is consecutively paginated on the lower right corner of each page, and the Court's record citations are to those page numbers, not the page numbers assigned by CM/ECF or PACER.

numbness[,] bilateral finger numbness, carpal tunnel syndrome, post-COVID muscle weakness and instability, memory loss with cognitive decline, depression, anxiety, hair loss, spoon nail, [and] nerve damage due to intubation." (R. 53.) Her DIB application was denied at both the initial and reconsideration stages of review, and at her request, an administrative hearing was held before an ALJ. Plaintiff and vocational expert Jennifer Stone testified at the hearing. (R. 32.)

The ALJ issued a written decision on May 13, 2024, finding that Plaintiff was not disabled. (R. 8–26.) In so finding, the ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 404.1520.[3] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not, the ALJ proceeded to the next step.

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since December 8, 2021. (R. 13.) At the second step, the ALJ found that Plaintiff had the severe impairments of "dyspnea, post-inflammatory pulmonary fibrosis and laryngeal disorder, stridor [scarring in lungs from COVID], vocal cord injury [mild inhibition of vocal cord abduction], obstructive sleep apnea (OSA), morbid obesity, and depression." (R. 14.) At step three, the ALJ determined that Plaintiff did not have an

[3] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.)

Between steps three and four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ assessed Plaintiff with the RFC:

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except: She can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can stand or walk for 2 hours in an 8-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally perform all other postural activities. She can frequently reach in all directions with right upper extremity. She must avoid work that requires frequent exposure to extreme cold, humidity[,] vibration, and respiratory irritants. She must avoid all exposure to dangerous machinery such as power saws and jack hammers. She can understand, remember, and apply information to perform detailed tasks and maintain concentration, persistence, or pace to perform detailed tasks on a sustained basis in a work setting. She can adjust to occasional workplace changes.

(R. 16–17.) In arriving at this RFC, the ALJ considered several medical opinions and prior administrative medical findings, including the consultative psychological examination report from Dr. Dustin J. Warner, Psy.D. (R. 25.) Based on Dr. Warner's observations and clinical findings, the doctor opined that Plaintiff could understand, remember, and follow simple instructions; that her attention and concentration skills would allow her to handle simple, routine, and repetitive work at a slower pace and persistence; that she could respond appropriately to brief and superficial contact with co-workers and supervisors; and that she would be restricted from tolerating the minimal stress and pressures found in entry level workplaces. (R. 25.) The ALJ found Dr. Warner's opinion "not persuasive because it is not

consistent with other evidence in the file and thus is an overestimate of the claimant's limitations." (R. 25.)

After the ALJ arrived at Plaintiff's RFC, she proceeded to step four of the sequential evaluation, where she determined that Plaintiff could perform her past relevant work as an Administrative Clerk. (R. 25.) Therefore, the ALJ concluded, Plaintiff was not disabled. (R. 26.)

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the

Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## III. Discussion

### A. The ALJ's Evaluation of Dr. Warner's Opinion

Plaintiff argues that the ALJ failed to consider the supportability and consistency of Dr. Warner's opinion. (Pl.'s Mem. at 11.) Certain regulations govern the SSA's consideration of medical opinions. *See* 20 C.F.R. § 404.1520c. When a medical source provides a medical opinion or prior administrative medical findings, the ALJ must consider the persuasiveness of the opinion or findings "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). Those five factors are supportability, consistency, relationship with the claimant, specialization, and any other relevant considerations. 20 C.F.R. § 404.1520c(c)(1)–(5). The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8

(D.S.D. July 14, 2022). The ALJ "may, but [is] not required to," explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2).

An ALJ assesses supportability by analyzing how well the medical source's opinion is justified by that source's use of objective medical evidence: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Simply put, the more objective evidence a medical source adduces to support the opinion, the more persuasive the opinion is.

An ALJ assesses consistency by considering that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). That is, the ALJ evaluates whether the medical opinion is consistent with evidence from sources other than the source who rendered the opinion.

In other words, supportability looks to how well the medical source justifies their own opinion with evidence from the record, and consistency looks to how well the medical source's opinion fits with other sources from the record.

The ALJ must not only consider the regulatory factors but also articulate that consideration. *See* 20 C.F.R. § 404.1520c(a) ("We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to

paragraph (b) of this section."); *id.* § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Given that the supportability and consistency factors are the most important factors to the persuasiveness determination, an ALJ "*will explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The ALJ's failure to articulate how the ALJ considered the consistency factor or the supportability factor is a legal error that may warrant remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*, No. 21-CV-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

Plaintiff argues that the ALJ did not explain how she considered the supportability factor or the consistency factor in evaluating Dr. Warner's opinion. (Pl.'s Mem. at 13.) Starting with consistency, the ALJ stated that Dr. Warner's opined limitations were inconsistent with other evidence in the record. (R. 25.) Although the ALJ did not go on to discuss the other evidence at that place in the written decision, the ALJ had discussed earlier in the decision why Plaintiff could understand, remember, and follow detailed (more than simple) instructions. Specifically, at step three of the sequential evaluation, the ALJ found that Plaintiff's reported ability to prepare meals, pay bills, go to appointments, shop,

drive, read, and play games was inconsistent with her allegation of difficulty remembering and following instructions. (R. 15.) In addition, Plaintiff was able to provide information about her health, describe her prior work history, follow instructions from providers, comply with treatments, and respond to questions from providers, and there was no mention of issues with her short- or long-term memory. (R. 15.) These findings were inconsistent with no more than a mild limitation in understanding, remembering, or applying information. (R. 15.)

The ALJ also discussed elsewhere in the decision why Plaintiff's attention and concentration skills would allow her to handle more than the simple, routine, and repetitive work, at a slower pace and persistence, that Dr. Warner opined. Specifically, in finding that Plaintiff had moderate difficulties in concentrating, persisting, or maintaining pace at step three, the ALJ noted a total lack of evidence in the record of distractibility or inability to complete testing due to lack of attention or concentration. (R. 16.) The ALJ further noted that Plaintiff could drive, prepare meals, watch TV, read, play games, manage funds, use the internet, handle her own medical care, and attend church, which was consistent with no more than a moderate limitation in concentration. (R. 15–16.) The ALJ also found earlier in the decision that Plaintiff's mental health treatment records were consistent with findings that she could understand, remember, and apply information to perform detailed tasks and could maintain concentration, persistence, or pace to perform detailed tasks on a sustained basis at work. (R. 24.) These records and the ALJ's related findings were inconsistent with Dr. Warner's opinion.

The ALJ also identified evidence elsewhere in the decision that was inconsistent with Dr. Warner's opined limitation that Plaintiff would be limited to only brief and superficial contact with co-workers and supervisors. Specifically, at step three, the ALJ found that Plaintiff had only mild difficulties interacting with others, based on her activities, socializing with friends and family, ability to get along with authority figures, and providers' reports that Plaintiff was pleasant, cooperative, and comfortable during appointments. (R. 15.)

Finally, the ALJ discussed elsewhere in the decision evidence showing that Plaintiff could tolerate more than the minimal stress and pressure found in entry-level workplaces. Specifically, the ALJ found persuasive the prior administrative medical findings of state agency consultant Maria Yapondjian-Alvarado, Psy.D., which included a finding that Plaintiff had a reduced ability to handle stress and changes in the workplace but could tolerate occasional workplace changes. (R. 25.) The ALJ also determined that Plaintiff did not meet the "paragraph C" criteria[4] because "[t]here is no evidence of an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation." (R. 16.)

The Court is satisfied that the ALJ considered how consistent Dr. Warner's opinion was with other sources in the record and articulated that assessment, despite having to garner the explanations from various parts of the decision. The ALJ did not do the same

[4] ALJs use the "paragraph C" criteria of Listings 12.02, 12.03, 12.04, 12.06, and 12.15 "to evaluate 'serious and persistent mental disorders'" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(c).

for the supportability factor, however. That is, "the ALJ did not *explain how* [she] considered the supportability factor[]." *See* 20 C.F.R. § 404.1520c(b)(2). Although the ALJ was not required to use the term "supportability," the ALJ did not make an equivalent finding about how "relevant the objective medical evidence and supporting explanations presented by" Dr. Warner were to support his opinion, *see id.* § 404.1520c(c)(1), either at that place in the decision or anywhere else.

It is true that the ALJ summarized Dr. Warner's findings in the decision. But the ALJ did not explain how she considered the supportability factor or how her consideration factored into the persuasiveness evaluation. Consequently, the Court will reverse the decision and remand the matter to the SSA for an evaluation of Dr. Warner's medical opinion that complies with 20 C.F.R. § 404.1520c.

**B. The ALJ's Potentially Inconsistent Findings**

In assessing Plaintiff's RFC between steps three and four, the ALJ found that Plaintiff could understand, remember, and apply information to perform detailed tasks, and could maintain concentration, persistence, or pace to perform detailed tasks on a sustained basis at work. (Pl.'s Mem. at 16–17.) Plaintiff argues that these findings are inconsistent with the ALJ's step-two finding that Plaintiff's "medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28."[5]

---

[5] Social Security Rulings ("SSRs") are binding on all aspects of the SSA and "represent precedent[ial] final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.160(b)(1).

(*See* R. 14.) Plaintiff bases her argument on SSR 85-15, which addresses a claimant's capability to do "other work" under the Medical-Vocational Guidelines at step five. (Pl.'s Mem. at 9–10 (citing SSR 85-15, 1985 WL 56857 (SSA 1985)).) The specific sentence on which Plaintiff relies reads: "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."[6] SSR 85-15, 1985 WL 56857, at *4. Applying the "simple-instructions" limitation embedded in this sentence, Plaintiff argues that the ALJ did not explain how someone who is significantly limited in the ability to understand, carry out, and remember simple instructions can be capable of understanding, remembering, and applying information to perform detailed tasks. (Pl.'s Mem. at 10.) The Commissioner did not respond to this argument.

The Commissioner's failure to respond to Plaintiff's argument amounts to a waiver. *Tristan M. v. Kijakazi*, No. 20-CV-2247 (TNL), 2021 WL 4993086, at *2 (D. Minn. Oct. 27, 2021) (citing *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009)). Therefore, the Court will not address the issue further and will include it in the scope of the remand.

---

[6] The Medical-Vocational Guidelines are a table of rules used to determine a claimant's capability to work depending on the claimant's RFC, age, education, and work experience. *See* Social Security Ruling 83-10, 1983 WL 31251, at *1 (SSA 1983).

### C. The ALJ's Hypothetical Question to the Vocational Expert

Plaintiff argues that the ALJ's errors resulted in an inaccurate RFC, which led to a faulty hypothetical question posed to the vocational expert at the hearing. "The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004). A vocational expert's testimony "constitutes substantial evidence only when based on a properly phrased hypothetical question." *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004). "The hypothetical must include all impairments that are supported by substantial evidence in the record as a whole." *Id.* Accordingly, if the ALJ's re-evaluation of Dr. Warner's medical opinion or re-consideration of Plaintiff's mental limitations and abilities results in a different RFC on remand, the ALJ shall propound a new hypothetical question to a vocational expert.

## IV. Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Memorandum (Dkt. No. 11) is **GRANTED**;
2. The relief requested in Defendant's Brief (Dkt. No. 25) is **DENIED**; and
3. The Commissioner's final decision is **REVERSED**, and the matter is **REMANDED** for:

a. an evaluation of Dr. Warner's medical opinion pursuant to 20 C.F.R. § 404.1520c;

b. an explanation how Plaintiff's abilities to understand, remember, and apply information to perform detailed tasks and to maintain concentration, persistence, or pace to perform detailed tasks on a sustained basis at work are consistent with the finding that Plaintiff's impairments significantly limit her ability to perform basic work activities as required by SSR 85-28; and

c. a new hypothetical question propounded to a vocational expert, if the above actions result in a different RFC.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 8, 2026

*s// John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge